UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---------------------------------------------------x
MARCY ZEVON,                              )
individually and on behalf of             )
all others similarly situated,            )
                                          )
                Plaintiff,            )      Case No. 20-cv-4938-GHW-GWG
                                          )
   - against -                            )
                                          )      CLASS ACTION
AMERICAN EXPRESS COMPANY,                 )
                                          )      JURY DEMANDED
                                          )
                Defendant.            )
---------------------------------------------------x

## AMENDED COMPLAINT

1. This action seeks redress for the unlawful practices of Defendant American Express Company ("Amex" or "Bank"), for providing, in connection with its credit-card accounts, disclosures with inaccuracies or omissions that violated the Truth in Lending Act ("TILA").

2. As alleged in greater detail below, Amex failed to furnish billing statements with complete and accurate information, or clear and conspicuous information, regarding billing dispute inquiries as required by TILA and its implementing regulations.

3. TILA's purpose is to assure meaningful disclosure of credit terms in order to (i) allow consumers to compare more readily the various credit terms available; (ii) enable consumers to avoid the uninformed use of credit; and (iii)

1

protect consumers against inaccurate and unfair billing practices. 15 U.S.C. § 1601(a). The Bank's conduct violates the express provisions of the TILA and the applicable Regulations.

4. Defendant's failure to properly provide the required disclosure on the billing statements sent to Plaintiff and other consumers about the procedure for contesting a charge and preserving billing rights is contrary to the enunciated purposes of TILA; this inadequate disclosure, instead of enabling them to avoid the uninformed use of credit, does the opposite.

5. Defendant's failure to make this disclosure resulted in the economic harm, or the risk of economic harm, to Plaintiff and other consumers.

6. Moreover, Defendant's failure to make this disclosure resulted in the harm, or the risk of harm, to the levels of credit consumer protection and information that Congress mandated for open-end credit users like Plaintiff.

7. Under the private enforcement provisions of TILA, Plaintiff and the proposed class seek the recovery of statutory damages of up to $1 million with respect to each of the Bank's failures to comply, plus actual damages.

## Jurisdiction and Venue

8. This Court has subject matter jurisdiction under 28 U.S.C. §§ 1331 and 1337, as well as under 15 U.S.C. § 1640(e), because this action arises under TILA, 15 U.S.C. § 1601, *et seq.*

9. This Court should exercise review of this action because Defendant furnished a billing statement or statements to Plaintiff that, failing to fully and

properly disclose the procedure for disputing a charge—in violation of the statute and its implementing regulatory provision—constituted a concrete and particularized injury to her informed use of credit and to her. U.S. Const., Art. III, §2, Cl. 1.

10. Venue is proper in this district because (1) the Bank transacts business in this district; (2) the Bank's principal place of business is in this district; (3) the Bank extended credit and provided the disclosures at issue to Plaintiff in this district; and (4) the interests of justice require maintenance of this action in this district.

## *Parties*

11. Plaintiff Marcy Zevon resides in New York County, New York.

12. Zevon is a "consumer," as that term is defined by § 1602(h) of TILA, because this complaint arises from the Bank's offer and extension of credit to Zevon, and her use of that credit account for personal, family or household purposes.

13. Upon information and belief, the Bank is a corporation doing business in the State of New York and throughout the United States.

14. Amex is a "creditor," as that term is defined by § 1602(f) of TILA and Regulation Z ("Regulation Z"), 12 C.F.R. §1026.2(a)(17), because at all relevant times, the Bank, in the ordinary course of its business, regularly – *i.e.*, more than 25 times a year – extended or offered to extend consumer credit for which a finance charge is or may be imposed, which is payable in more than four installments.

*Factual Allegations*

15.  Zevon is the holder of a credit card account issued by Defendant and used for household purposes.

16.  The June 2019 billing statement that the Bank furnished Zevon on or about June 26, 2019, listing a number of purchase transactions, included Billing Inquiries notices that supplied both a mailing address and a telephone number, either of which Zevon could supposedly use to contact Amex and provide notice she was disputing a charge. Exhibit A.

17.  Similarly, the July 2019 billing statement that the Bank furnished Zevon on or about July 27, 2019, listing a number of purchase transactions, included Billing Inquiries notices that supplied both a mailing address and a telephone number, either of which Zevon could supposedly use to contact Amex and provide notice she was disputing a charge. Exhibit B.

18.  Additionally, the August 2019 billing statement that the Bank furnished Zevon on or about August 27, 2019, listing a number of purchase transactions, included Billing Inquiries notices that supplied both a mailing address and a telephone number, either of which Zevon could supposedly use to contact Amex and provide notice she was disputing a charge. Exhibit C.

19.  Additionally, the September 2019 billing statement that the Bank furnished Zevon on or about September 26, 2019, listing a number of purchase transactions, included Billing Inquiries notices that supplied both a mailing address

and a telephone number, either of which Zevon could supposedly use to contact Amex and provide notice she was disputing a charge. Exhibit D.

20. None of the aforementioned billing statements included a disclosure that distinguished contacting Amex by telephone at the provided toll-free number versus contacting Amex in writing at the provided mailing address with respect to preservation of billing rights.

21. Zevon reviewed the aforementioned billing statements and the Billing Inquiries disclosures, and she could not determine that the preservation of her billing rights in the event of a dispute depended on which method she used to contact Amex to provide notice she was disputing a charge.

22. The then-prevailing terms in Amex's credit card agreement with its customers, including Zevon, provided that a customer's notice of a dispute by telephone did not serve to preserve her billing rights—specifically, the right to have the charge later reduced or removed.

23. The then-prevailing terms in Amex's credit card agreement with its customers, including Zevon, provided that a customer's notice of a dispute by mail did serve to preserve her billing rights—specifically, the right to have the charge later reduced or removed.

24. Thus, the Bank's incomplete disclosure on the billing statements furnished to Zevon regarding billing disputes—that is, its failure to provide a precautionary instruction about telephone notification of disputes and/or its failure to make the mailing address for disputes clear and conspicuous—constituted a key

5

omission or misrepresentation of the terms of the account that was a violation of Regulation Z and TILA.

25. All members of the class, as defined herein, were furnished billing statements with Billing Inquiries disclosures that failed to completely and accurately disclose, in violation of the statute and its implementing regulations, that only a dispute notice in writing would preserve the consumer's billing rights.

## *Class Allegations*

26. Zevon brings this action individually and on behalf of all persons similarly situated.

27. The class consists of all persons who, within a year from the original filing date of this action, were provided a billing statement by Defendant with a Billing Inquiries disclosure that did not specify that in the event of a charge dispute, the consumer's billing rights would not be preserved if made by telephone and would be preserved only if made in a writing.

28. Specifically excluded from this class are Defendants, any entity in which Defendants have a controlling interest, and the officers, directors, affiliates, legal representatives, heirs, successors, subsidiaries or assigns of any such individual or entity.

29. The Class members for whose benefit this action is brought is so numerous that joinder of all Class members is not practicable. In light of the tens of thousands of credit cards issued by the Bank, the number of class members is believed to be in excess of 1,000 persons.

30.     Plaintiff's claims are typical of, if not identical to, all members of the Class and she does not have any interest that is adverse or antagonistic to the interests of the Class. If the conduct of the Bank violates TILA as applied to Zevon, then it violates TILA with respect to each member of the Class.

31.     Plaintiff will fairly and adequately protect the interests of each member of the Class as she is committed to the vigorous prosecution of this action and, to that end, has retained competent counsel experienced in complex litigation of this nature.

32.     The Class is proper for certification under Rule 23(b)(2) of the Federal Rules of Civil Procedure. The Defendant's actions complained of herein are generally applicable to all Class members, thereby making final injunctive relief appropriate with respect to each Sub-class as a whole.

33.     Each Class is also proper for certification under Federal Rule of Civil Procedure 23(b)(3). A class action is superior to other available methods for the fair and efficient adjudication of the claims asserted herein. Because damages suffered by individual Class members may be relatively small, the expense and burden of individual litigation make it impracticable for the class to seek redress individually for the wrongs they have suffered. Members of the Class do not have a particular interest in individually controlling the prosecution of separate actions.

34.     There are questions of law and fact which are common to the members of the Class and which predominate over questions affecting only individual members. Common questions of law and fact include, but are not limited to,

whether the Bank had a standardized procedure by which it made Billing Inquiries disclosures compliant with TILA and Regulation Z on every billing statement.

35. Upon information and belief, the Class consists of thousands of customers.

36. Thus, a class action is an appropriate and superior method for the fair and efficient adjudication of the present controversy given the following factors:

   a) Common questions of law and/or fact predominate over any individual questions which may arise and, accordingly, there would accrue enormous savings to both the Court and the Class in litigating the common issues on a class-wide instead of a repetitive individual basis; and

   b) The aggregate volume of the individual class members' claims, coupled with the economies of scale inherent in litigating similar claims on a common basis, will enable this case to be litigated as a class action on a cost-effective basis, especially when compared with repetitive individual litigation.

37. Class certification is also fair and efficient because prosecution of separate actions by individual Class members would create a risk of differing adjudications with respect to such individual members of the Class, which as a practical matter may be dispositive of the interests of other members not parties to the adjudication, or substantially impede their ability to protect their interests. Moreover, since the actual monetary damages suffered by, or statutory damages available to, individual Class members may be relatively small, although significant in the aggregate, the expenses and burdens of individual litigation make it impossible or effectively impossible for the members of the Class to seek individual redress for the TILA violations committed by Defendant.

38. Plaintiff anticipates that there will be no difficulty in the management of this litigation. The records of the individuals encompassed within the Class are in Defendant's possession.

### *Violations of the Truth in Lending Act*

39. Plaintiff repeats and re-alleges each and every allegation contained in the foregoing paragraphs with the same force and effect as though fully set forth herein.

40. Congress originally authorized the Federal Reserve Board ("FRB" or "Board") to promulgate regulations granting it broad authority to effectuate the purposes of TILA; that authority is now delegated to the Consumer Financial Protection Bureau (the "CFPB"). 15 U.S.C. § 1604(a) (2008); 15 U.S.C. § 1604(a).

41. The set of regulations that the FRB promulgated to implement TILA is known as Regulation Z. 12 C.F.R. §226.1, *et seq.*

42. To reflect its assumption of TILA rulemaking authority as of July 21, 2011, the CFPB issued an interim final rule republishing Regulation Z and adopting the FRB's promulgated regulations with only minor changes that did not impose any new substantive obligations on creditors. 76 FR 79768 (Dec. 22, 2011); 12 C.F.R. §1026.1, *et seq.*

43. TILA requires open-end credit issuers such as the Bank to send a periodic statement after the close of the billing period ("Billing Statement") to its customers with an outstanding balance on their credit card accounts. 15 U.S.C. §1637(b).

44. Over a decade ago, Congress began to more closely examine various practices in the credit card industry it deemed "abusive" and proceeded to amend TILA to put a halt to them. H.R. Rep. 111-88 at 10-12 (April 27, 2009); S. Rep 111-16 at 1-10 (May 4, 2009).

45. In addition to curbing the abusive practices, Congress, in keeping with the purposes of the statute—to help consumers avoid the uninformed use of credit, to help consumers better compare credit options, and to avoid unfair billing practices—amended TILA to provide for enhanced penalties to credit-card lenders who violated the statute: twice the finance charge involved, with a minimum of $500 and a maximum of $5,000, "or such higher amount as may be appropriate in the case of an established pattern or practice of such failures." 15 U.S.C. §1640(a)(2)(A)(iii).

46. Under TILA, Amex was required to furnish Zevon on any billing statement "[t]he address to be used by the creditor for the purpose of receiving billing inquiries from the obligor." 15 U.S.C. §1637(b)(10).

47. Congress made a legislative judgment that monthly disclosures were the best way to inform consumers how to properly exercise their billing rights. In other words, while Congress could have decided to counter some risk by requiring only an annual disclosure, it instead undertook to further reduce that risk by requiring creditors to perpetually remind consumers how to dispute a charge and properly exercise their billing rights.

48. Further, the regulation and the corresponding Official Staff Commentary promulgated by the CFPB implementing 15 U.S.C. §1637(b)(10) requires that when the lender supplies in billing statements both a mailing address and a telephone number for billing inquiries, it must also make a clear and conspicuous disclosure that sending a dispute notice to the specified mailing address preserves billing rights and caution that telephoning does not. 12 C.F.R. §1026.7(b)(9), 12 C.F.R. Pt. 1026, Supp. I, Comment 7(b)(9)-2.

49. Moreover, under TILA and Regulation Z, an open-end credit issuer like the Bank may make changes to the credit agreement concerning the procedure regarding billing inquiries without providing an advance change-in-terms notice to customers; such notice requirements are limited to only certain other changes. 15 U.S.C. 1637(i), 12 C.F.R. § 1026.9(c)(ii).

50. Thus, even if a customer received an initial disclosure at account-opening on the procedure for disputing a charge on a billing statement, that procedure may no longer be in effect, so Congress and the CFPB mandated that lenders make the disclosure of the procedure to exercise this important consumer right on the monthly billing statement and in a clear and conspicuous fashion.

51. The Bank sent Zevon and other consumers in the Class one or more billing statements with the disclosure that billing inquiries—that is, dispute notifications—could be made by sending them to a particular mailing address or by calling a toll-free telephone number.

52. However, at the time that disclosure was furnished to Zevon and other consumers in the Class they could not, under the account agreement, dispute a charge by telephone and preserve their billing rights.

53. Zevon reviewed the Bank's Billing Inquiries disclosure and, as such, the disclosure harmed Zevon concretely by denying her the full account information that Congress required she receive with her Billing Statement.

54. Moreover, the Bank's Billing Inquiries disclosure caused Zevon a material risk of harm in that she was subject to losing her billing rights had she followed the disclosure's misleading instruction and lodged a dispute by phone; that is, she could have lost the opportunity to have charges that appeared on her account reduced or removed.

55. Similarly, each of the Bank's failures to disclose on the Billing Statements it sent to other members of the Class the complete and proper Billing Inquiries disclosure constituted a concrete harm or created a material risk of concrete harm to those consumers.

56. With respect to each of the Bank's violations of TILA for noncompliant disclosures, as alleged above, Plaintiff and the Class are entitled to recover up to $1 million in statutory damages, together with actual damages, costs and reasonable attorney fees. 15 U.S.C. § 1640(a).

57. Alternatively, with respect to each of the Bank's violations of TILA for noncompliant disclosures, as alleged above, Plaintiff is entitled to recover up to

$5,000 in individual statutory damages, together with any actual damages, costs and reasonable attorney fees. 15 U.S.C. § 1640(a)(2)(A)(iii).

**WHEREFORE**, Plaintiff Marcy Zevon prays on her behalf and on behalf of the Class that judgment be entered against Defendant as follows:

(1) An order certifying the Class under Federal Rule of Civil Procedure 23(b)(2) and, additionally or in the alternative, an order certifying the Class under Federal Rule of Civil Procedure 23(b)(3);

(2) Maximum statutory damages as provided under 15 U.S.C. § 1640(a)(2);

(3) Actual damages as provided under 15 U.S.C. § 1640(a)(1);

(4) Attorney fees, litigation expenses, and costs; and

(5) Such other and further relief as to this Court may seem just and proper.

### *Jury Demand*

Plaintiff respectfully requests a trial by jury.

Dated: Brooklyn, New York
         December 7, 2020

                                        Respectfully Submitted,


                              By:   /s/ *Brian L. Bromberg*
                                    Brian L. Bromberg
                                    One of Plaintiff's Attorneys

<u>Attorneys for Plaintiff</u>

Brian L. Bromberg
Joshua Tarrant-Windt
Bromberg Law Office, P.C.
352 Rutland Road #1
Brooklyn, NY 11225
(212) 248-7906

Harley J. Schnall
Law Office of Harley J. Schnall
711 West End Avenue
New York, NY 10025
(212) 837-2550