```
                                                    USDC SDNY
                                                    DOCUMENT
UNITED STATES DISTRICT COURT                        ELECTRONICALLY FILED
SOUTHERN DISTRICT OF NEW YORK                       DOC #:_____
 ------------------------------------------------------------- X
                                                   :           DATE FILED: 9/22/2021
MARCY ZEVON, individually and on behalf of         :
all others similarly situated,                     :
                                                   :
                                    Plaintiffs,    :
                                                   :            1:20-cv-4938-GHW
                    -against-                      :
                                                   :           MEMORANDUM OPNION
AMERICAN EXPRESS COMPANY,                          :               AND ORDER
                                                   :
                                    Defendant.     :
                                                   :
 ------------------------------------------------------------- X
```

GREGORY H. WOODS, District Judge:

Plaintiff Marcy Zevon is an American Express cardholder. Zevon brings this putative class action against Defendant American Express ("Amex"), alleging that Amex failed to include a disclosure required by the Truth in Lending Act (the "TILA") on her monthly billing statements. Because Zevon does not sufficiently plead that she was concretely harmed by Amex's alleged violations of the TILA, the Court finds that Zevon has not established Article III standing. Accordingly, Defendant's motion to dismiss is GRANTED.

## I. BACKGROUND

### A. Facts[1]

Marcy Zevon holds an Amex credit card account. Am. Compl., Dkt. No. 17, ¶ 15. Amex's card agreement provides that for a consumer to preserve her eligibility to have a disputed charge reduced or removed—her "billing rights"—she must dispute the charge in writing. *Id.* ¶¶ 22–23. A consumer who disputes a charge by telephone does not preserve her billing rights. *Id.* Each month from June to September 2019, Zevon received a monthly billing statement for her Amex card. *Id.*

---

[1] Unless otherwise noted, the facts are drawn from the amended complaint and are accepted as true for the purposes of this motion to dismiss. *See, e.g., Carter v. HealthPort Techs., LLC*, 822 F.3d 47, 57 (2d Cir. 2016).

¶¶ 16–19, Ex. A–D.  Each statement contained a notice under the heading "Billing Inquiries" with both an address and a phone number.  *Id.*  The notice in each statement did not explain that consumers who only disputed charges by calling the phone number provided, and not also in writing to the address provided, would not preserve their right to have charges reduced or removed.  *Id.* ¶ 20.  Zevon does not claim to have submitted a billing-error inquiry but states that in reviewing her "billing statements and Billing Inquiries disclosures," she "could not determine that the preservation of her billing rights in the event of a dispute depended on which method she used to contact Amex to provide notice she was disputing a charge."  *Id.* ¶ 21.

Zevon alleges that Amex failed to comply with a provision of the TILA, as implemented through Regulation Z and its commentary, which, she contends, requires a clear and conspicuous disclosure on monthly statements that include both a phone number and address for billing inquiries.  *Id.* ¶ 48 (citing 12 C.F.R. § 1026.7(b)(9), 12 C.F.R. Pt. 1026, Supp. I, Comment 7(b)(9)-2)).  She alleges that the terms of the credit card agreement that instructed consumers on how to preserve their billing rights were subject to change without notice and, as a result, the repeated disclosures on monthly statements are necessary to keep consumers apprised of their obligation to dispute charges in the proper form.  *Id.* ¶¶ 49–50.  Zevon claims that, as a result of this missing disclosure on her monthly statements, she could have lost the opportunity to properly dispute charges that appeared on her billing statements.  *Id.* ¶ 54.

### B. Procedural History

On June 26, 2020, Plaintiff filed a Complaint on behalf of herself and all others similarly situated seeking statutory damages, actual damages, costs, and attorneys' fees.  Dkt. No. 1.  On December 7, 2020, Plaintiff amended her complaint.  Dkt. No. 17.  On January 15, 2021, Amex moved to dismiss under Fed. R. Civ. P. 12(b)(1), asserting a facial challenge to standing, and under Fed. R. Civ. P. 12(b)(6), for failure to state a claim.  Dkt. Nos. 21–22.  Plaintiff opposed on February

12, 2021. Dkt. No. 25. Defendant replied on March 12, 2021. Dkt. No. 28. Following the Supreme Court's decision in *TransUnion LLC v. Ramirez*, both parties provided the Court with supplemental briefing. Dkt. Nos. 32–34.

## II. LEGAL STANDARD

"A district court properly dismisses an action under Fed R. Civ. P. 12(b)(1) for lack of subject-matter jurisdiction if the court 'lacks the statutory or constitutional power to adjudicate it,' such as when . . . the plaintiff lacks constitutional standing to bring the action." *Courtland St. Recovery Corp. v. Hellas Telcomms., S.a.r.l.*, 790 F.3d 411, 416–17 (2d Cir. 2015) (quoting *Makarova v. United States*, 201 F.3d 110, 113 (2d Cir. 2000)). Where, as here, "the Rule 12(b)(1) motion is facial, *i.e.*, based solely on the allegations of the complaint . . . [t]he task of the district court is to determine whether the [complaint] allege[s] facts that affirmatively and plausibly suggest that [the plaintiff] has standing to sue." *Carter v. Healthport Techs., LLC*, 822 F.3d 47, 56 (2d Cir. 2016) (third and fourth alterations in original) (internal quotation marks and citations omitted). "At the pleading stage, general factual allegations of injury resulting from the defendant's conduct may suffice, for on a motion to dismiss [the Court] presume[s] that general allegations embrace those specific facts that are necessary to support the claim." *Id.* (quoting *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 561 (1992)). The Court must "accept[] as true all material factual allegations of the complaint, and draw[] all reasonable inferences in favor of the plaintiff." *Id.* at 57 (internal quotation marks and citation omitted).

"Article III restricts federal courts to the resolution of cases and controversies . . . . That restriction requires that the party invoking federal jurisdiction have *standing*—the personal interest that must exist at the commencement of the litigation." *Id.* at 55 (omission in original) (quoting *Davis v. Fed. Election Comm'n*, 554 U.S. 724, 732 (2008)). "This is the threshold question in every federal case, determining the power of the court to entertain the suit." *Warth v. Seldin*, 422 U.S. 490,

3

498 (1975). "The irreducible constitutional minimum of standing consists of three elements: the individual initiating the suit must have (1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision." *Dhinsa v. Krueger*, 917 F.3d 70, 77 (2d Cir. 2019) (internal quotation marks omitted) (quoting *Spokeo, Inc. v. Robbins*, 136 S. Ct. 1540, 1547 (2016)). The party seeking to invoke federal jurisdiction bears the burden of establishing each of these elements. *See Spokeo*, 136 S. Ct. at 1547. A party invoking federal court jurisdiction must have "standing" to sue "for each claim and form of relief sought." *Cacchillo v. Insmed, Inc.*, 638 F.3d 401, 404 (2d Cir. 2011) (quoting *Baur v. Veneman*, 352 F.3d 625, 642 n.15 (2d Cir. 2003).

### III. DISCUSSION

Zevon lacks Article III standing because she fails to establish that she suffered an injury in fact. "To demonstrate injury in fact, a plaintiff must show the 'invasion of a legally protected interest' that is 'concrete and particularized' and 'actual or imminent, not conjectural or hypothetical.'" *Strubel v. Comenity Bank*, 842 F.3d 181, 188 (2d Cir. 2016) (quoting *Lujan*, 504 U.S. at 561).

Zevon claims that she suffered an injury in fact resulting from Amex's alleged violations of the TILA. However, "Congress' role in identifying and elevating intangible harms does not mean that a plaintiff automatically satisfies the injury-in-fact requirement whenever a statute grants a person a statutory right and purports to authorize that person to sue to vindicate that right. Article III standing requires a concrete injury even in the context of a statutory violation." *Spokeo*, 136 S. Ct. at 1549. "For standing purposes, therefore, an important difference exists between (i) a plaintiff's statutory cause of action to sue a defendant over the defendant's violation of federal law, and (ii) a plaintiff's suffering concrete harm because of the defendant's violation of federal law." *TransUnion LLC v. Ramirez*, 141 S. Ct. 2190, 2205 (2021). "[A]n injury in law is not an injury in fact.

4

Only those plaintiffs who have been *concretely harmed* by a defendant's statutory violation may sue that private defendant over that violation in federal court." *Id.* Accordingly, Zevon's allegations that Amex violated the TILA are insufficient, standing alone, to satisfy Article III's injury-in-fact requirement. Zevon must establish that the alleged statutory violations caused her concrete harm.

Thus, the standing inquiry in this case is whether Zevon was concretely harmed by Amex's alleged violations of the TILA. To be "concrete," an injury must be "real, and not abstract." *TransUnion*, 141 S. Ct. at 2204 (quoting *Spokeo*, 136 S. Ct. at 1548). Zevon alleges that Amex's violations of the TILA caused two distinct harms: (1) an informational harm because she was denied "the full account information that Congress required she receive with her Billing Statement," and (2) "a material risk of harm in that . . . she could have lost the opportunity to have charges that appeared on her account reduced or removed." Am. Compl. ¶¶ 53–54; Pl. Suppl. Br., Dkt. No. 33, at 3. Zevon fails to demonstrate a concrete injury on either ground.

### A. Informational Injury

Zevon has not established a concrete informational injury. The Supreme Court's recent decision in *TransUnion LLC v. Ramirez* is instructive. In *TransUnion*, class members alleged that the defendant, in violation of its obligations under the Fair Credit Reporting Act, failed "to provide them with their complete credit files upon request," and failed to include a summary of rights in certain mailings. *TransUnion*, 141 S. Ct. at 2213. The Court considered whether the alleged violations caused a concrete informational injury under its precedent. *Id.* at 2214. The Court distinguished the facts in *TransUnion* from the precedential cases, in which the Court had found a sufficient showing of concrete injury, for two reasons. First, the plaintiffs in *TransUnion* "did not allege that they failed to receive any required information. They argued only that they received it *in the wrong format*." *Id.* Second, the precedential cases "involved denial of information subject to public-disclosure or sunshine laws that entitle all members of the public to certain information." *Id.*

5

No such public-disclosure laws were at issue in *TransUnion*. *Id.* In addition, the Court observed that the plaintiffs did not identify any "'downstream consequences' from failing to receive the required information." *Id.* (quoting *Trichell v. Midland Credit Mgmt., Inc.*, 964 F.3d 990, 1004 (11th Cir. 2020)). Accordingly, the Court concluded that the plaintiffs had not suffered a concrete informational injury. *Id.*

Zevon's allegations similarly fail to establish a concrete informational injury. Zevon argues that Amex was required to make a clear and conspicuous disclosure of the address for bill-error inquiries and to clarify that submitting a dispute notice over the telephone would not preserve her billing rights. Am. Compl. ¶¶ 46–50. However, Zevon acknowledges that this information was included in Amex's card agreement. *Id.* ¶¶ 22–23. Zevon does not allege that she did not receive a copy of the agreement. Thus, like the plaintiffs in *TransUnion*, Zevon only alleges that she received the information in the wrong format because it was not included in clear and conspicuous language on her billing statements. Additionally, this case does not involve a public-disclosure law.

Finally, Zevon does not allege any downstream consequences from failing to receive the required information on her billing statements. Zevon merely alleges that she could have lost her billing rights if she submitted a dispute over the telephone. "An 'asserted informational injury that causes no adverse effects cannot satisfy Article III.'" *TransUnion*, 141 S. Ct. at 2214 (quoting *Trichell*, 964 F.3d at 1004). Because Zevon never submitted or even attempted to submit a billing-error inquiry, she has not established a concrete informational injury.

**B. Risk of Future Harm**

Zevon alleges that she faced the risk of future harm because "she could have lost the opportunity to have charges that appeared on her account reduced or removed" due to the misleading disclosures on her billing statements. Am. Compl. ¶ 54. A risk of future harm may provide standing to seek injunctive relief in certain circumstances. *TransUnion*, 141 S. Ct. at 2210.

6

Yet, "a plaintiff must 'demonstrate standing separately for each form of relief sought.' Therefore, a plaintiff's standing to seek injunctive relief does not necessarily mean that the plaintiff has standing to seek retrospective damages." *Id.* (citation omitted) (quoting *Friends of the Earth, Inc. v. Laidlaw Env't Servs. (TOC), Inc.*, 528 U.S. 167, 185 (2000)).

      Here, Zevon seeks only damages. *TransUnion* provides guidance on whether Zevon has standing for her damages claim based on her asserted risk of future harm. In *TransUnion*, class members argued that they suffered a concrete injury because they were exposed to a material risk of harm that incorrect information in their credit files could have been disseminated to third parties. *Id.* at 2210. However, the "plaintiffs did not demonstrate that the risk of future harm materialized . . . . Nor did those plaintiffs present evidence that the class members were independently harmed by their exposure to the risk itself—that is, that they suffered some other injury (such as an emotional injury) from the mere risk that their credit reports would be provided to third-party businesses." *Id.* at 2211. The Court found "persuasive" the argument that "in a suit for damages, the mere risk of future harm, standing alone, cannot qualify as a concrete harm—at least unless the exposure to the risk of future harm itself causes a *separate* concrete harm." *Id.* at 2210–11. Accordingly, the Court concluded that the class members did not establish a concrete injury based on their asserted risk of future harm. *Id.* at 2211.

      Similarly, Zevon does not allege that the risk of harm generated by the TILA violations ever materialized. She alleges only that, because of the missing disclosures on her monthly statements, she *could* have lost the opportunity to properly dispute charges that appeared on her billing statements. Am. Compl. ¶ 54. She does not allege that she actually lost any such opportunity. Nor does Zevon allege that the risk of losing her billing rights caused any separate concrete harm. Thus, Zevon's asserted risk of future harm does not support Article III standing for her damages claim.

## IV. LEAVE TO AMEND

The Court grants Plaintiff leave to replead her claims. *See Cortec Indus., Inc. v. Sum Holding L.P.*, 949 F.2d 42, 48 (2d Cir. 1991) ("It is the usual practice upon granting a motion to dismiss to allow leave to replead."); *see also* FED. R. CIV. P. 15(a)(2) ("The court should freely give leave [to amend] when justice so requires."). While leave may be denied "for good reason, including futility, bad faith, undue delay, or undue prejudice to the opposing party," those circumstances do not apply in this case. *TechnoMarine SA v. Giftports, Inc.*, 758 F.3d 493, 505 (2d Cir. 2014). Any amended complaint must be filed no later than fourteen days from the date of this order.

## V. CONCLUSION

For the reasons stated above, Plaintiff has not established standing. Accordingly, Defendant's motion to dismiss is GRANTED. The court grants Plaintiff's request for leave to amend her complaint.

The Clerk of Court is directed to terminate the motion pending at Dkt. No. 21.

SO ORDERED.

Dated: September 22, 2021  
New York, New York

                                        GREGORY H. WOODS  
                                        United States District Judge